UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

TIMOTHY GAINES,                    )
                                   )
                Petitioner,        )
                                   )
        vs.                        )        No. 2:24-cv-00557-JMS-MG
                                   )
TRICIA PRETORIUS, Warden,          )
                                   )
                Respondent.        )

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT

Petitioner Timothy Gaines seeks a writ of habeas corpus under 28 U.S.C. § 2254. [Filing No. 2.] He challenges prison disciplinary proceeding ISF-24-06-001395 in which he was found guilty of Offense 202, Possession or Use of a Controlled Substance, and was sanctioned with the imposition of a 90-day loss of good-time credit and the imposition of a one-step demotion in credit earning class. [Filing No. 18-8.] He alleges that the discipline was imposed in violation of his due process and equal protection rights. For the reasons explained below, neither Mr. Gaines's due process rights nor his equal protection rights were violated by the disciplinary hearing and his habeas petition is **DENIED**.

## I.
### LEGAL BACKGROUND

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present

evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II.
### FACTUAL BACKGROUND

On June 6, 2024, Sergeant O. Fagoroye wrote a Conduct Report charging Mr. Gaines with Offense B-202, Possession or Use of a Controlled Substance, which prohibits "[p]ossession or use of any unauthorized controlled substance pursuant to the law of the State of Indiana or the United States Code, possession of drug paraphernalia, possession/use of a controlled substance analog or a lookalike substance." [Filing No. 18-1; Filing No. 18-15 at 3.] The Conduct Report states:

> On 06-06[-]24 at Approx. 1737 in DRHU lobby, I Sgt. O. Fagoroye #341 conducted a search of Offender Gaines, Timothy #983065 where I removed his shoes, socks, black gym shorts, and knee brace around his left leg. Inside the knee brace I found 2 packages of orange substance reasonably believed to be suboxone, a contraband and a controlled substance. Gaines was placed in DRHU holding cell I issued him notice of confiscated property at approx. 1755, he refused to sign. Offender Gaines #983065 was identified by his state issued ID and informed of his report of conduct B-231 intoxicating substance.

[Filing No. 18-1.] Although the Conduct Report ended with a reference to "B-231 intoxicating substance," Mr. Gaines was charged with Offense B-202, Possession or Use of a Controlled Substance:

| Name of Offender | | DOC# of Offender | Facility | | Housing Unit |
|---|---|---|---|---|---|
| GAINES, TIMOTHY | | 983065 | Putnamville Correctional Facility | | S-OA, 0009L |
| Date of Incident | Time of Incident | | Place of Incident | | Date report Written |
| 06/06/2024 | 17:34 | | 11-SD; Admin. Building 2 | | 06/06/2024 |
| Offense | | | | Indiana Code | |
| 202-Possession/Use Of A Controlled Substance | | | | | |

[Filing No. 18-1.] The Conduct Report noted that there was camera footage and that the "[s]ubstance [was] forwarded to [the office of internal investigations] evidence box." [Filing No.

18-1.]  Mr. Gaines received a Notice of Confiscated Property indicating that the substance was taken from him.  [Filing No. 18-2.]

On June 11, 2024, Mr. Gaines was notified of the charge, provided with a copy of the Conduct Report, and pled not guilty.  [Filing No. 18-1; Filing No. 18-5.]  He did not request any witnesses or physical evidence.  [Filing No. 18-5.]  The Screening Report indicated that the offense charged was B-202, Possession or Use of a Controlled Substance, and that the earliest date of the hearing would be June 21, 2024, but this was subsequently crossed out and rewritten as June 20, 2024.  [Filing No. 18-5.]  The hearing was then postponed three times because: (1) there was no hearing officer on June 20, 2024 due to staff reassignments; (2) "phone calls" were needed for further investigation; and (3) a witness statement was needed from Officer Draughn.  [Filing No. 18-7 at 2-4.]

The hearing was held on June 28, 2024.  [Filing No. 18-8.]  The Disciplinary Hearing Officer ("DHO") took into consideration the Conduct Report, photos, witness statements, and the Report of Disciplinary Hearing Video Evidence Review ("Video Evidence Review").  [Filing No. 18-8.]  The Video Evidence Review provided the following summary:

> On the date of 06/24/24 at approximately 17:00 I Sergeant Hilliard was in the DHB Office reviewing footage of an incident that occurred on 06/06/24 at approximately 17:37 in the DRHU Lobby.  I observed I/I Gaines, Timothy #983065 being searched by Sergeant Fagoroye.  While conducting the search, he found 2 packages with a suspected controlled substance in Gaines's knee brace. Fagoroye returned shortly after to offer a confiscation slip which Gaines refused to sign.

[Filing No. 18-9.][1]  The following witness statements were considered by the DHO:

---

[1] The Respondent submitted the video evidence to the Court *ex parte*.  [Filing No. 19.]  The Court has reviewed the video evidence and finds that the officer's review of the video evidence is accurate and notes that two orange-colored packages that were found in Mr. Gaines's knee brace are plainly visible on the footage.

- Officer Draughn's statement that he observed Sergeant Fagoroye remove Mr. Gaines's knee brace and find two packages of an orange substance believed to be suboxone. [Filing No. 18-10.]

- Officer Hammer's statement that Mr. Gaines was searched "due to him fleeing and resisting staff" and that two packages of orange-colored substance were found in Mr. Gaines's knee brace. [Filing No. 18-11.]

- Officer Kadinger's statement that he assisted Sergeant Fagoroye with the search of Mr. Gaines and found two plastic-wrapped items hidden in Mr. Gaines's knee brace. [Filing No. 18-12.]

The DHO found Mr. Gaines guilty, explaining the reasoning of the decision as:

The conduct report, witness statements and video review were considered in this disposition. . . . DHO finds [Mr.] Gaines guilty due to video clearly showing the author of conduct [report] take the contraband from [Mr.] Gaines with witnesses to back up the incident. The author of [conduct] report clearly states based on his correctional experience he believes the contraband to be a controlled substance. DHO believes contraband found is consistent with suboxone based on the photos.

[Filing No. 18-8.] Mr. Gaines was sanctioned with the imposition of a one-step demotion in credit earning class and a 90-day loss of good-time credit. [Filing No. 18-8.]

Mr. Gaines appealed to both the Facility Head and the Indiana Department of Correction Final Reviewing Authority ("Final Reviewing Authority"), who both denied his appeals.[2] [Filing No. 18-13; Filing No. 18-14.] Mr. Gaines then brought this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on November 11, 2024. [Filing No. 2.] He asserts that his due process rights were violated because: (1) he was not able to adequately prepare a defense for Offense B-202, Possession or Use of a Controlled Substance, because the Conduct Report was inconsistent regarding which offense was charged; (2) the substance that was recovered was not chemically tested; (3) the re-scheduling of the hearing from June 21, 2024 to June 20, 2024 violated his right to 24-hours' notice of the charge against him before a hearing; and (4) the Final Reviewing

---

[2] Additional background on Mr. Gaines's appeal process is provided below as relevant.

Authority did not consider all of the information when it denied his appeal, which also violated his Fourteenth Amendment Equal Protection rights. [Filing No. 2 at 3-7.] On December 31, 2024, Mr. Gaines filed a Motion to Supplement his Petition to add the argument that he was deprived of an impartial decisionmaker, and on January 21, 2025, he filed a similar motion to add the argument that he "was not given 24 hours of notice of the evidence against him." [Filing No. 12; Filing No. 13.] On March 4, 2025, the Court granted Mr. Gaines's motions and ordered the Respondent to respond to the two new grounds raised. [Filing No. 15.]

### III.
#### ANALYSIS

As a preliminary matter, the Respondent argues that Mr. Gaines has procedurally defaulted some of his arguments because he did not raise them at the administrative level. [Filing No. 18 at 7-11.] The Court turns first to that issue first before considering the merits.

**A.    Exhaustion**

The Respondent argues that Mr. Gaines procedurally defaulted on the following claims: (1) the failure to chemically test the substance; (2) that not all information was used by the Final Reviewing Authority when it denied his appeal; and (3) the denial of an impartial decisionmaker. [Filing No. 18 at 8.] The Respondent asserts that these grounds were not presented on appeal at the administrative level and that Mr. Gaines cannot establish cause and prejudice or a miscarriage of justice to overcome his default. [Filing No. 18 at 9.] The Respondent argues that Mr. Gaines's first-level appeal only challenged the inconsistencies in the offense charged on the Conduct Report and the failure to provide 24-hour notice of the charges and evidence against him. [Filing No. 18 at 8-10.] The Respondent contends that, although Mr. Gaines's first-level appeal criticizes the conduct of the DHO, it does not allege bias. [Filing No. 18 at 8-10.]

Mr. Gaines argues that he was unable to obtain the correct form, pen, and paper to include all of his arguments in his first-level appeal because "prison officials thwarted him from exhausting and instead mocked him for being in segregation and told him that if he enjoyed his belongings (paper and ink pens) he should not have come to segregation." [Filing No. 21 (citing Filing No. 12).] He contends that "[a]fter getting out of segregation of course past the time to file a timely appeal, [he] attempted to turn in a late appeal form raising" the grounds alleged by Respondent to have been defaulted and turned it in but never received a response. [Filing No. 21.] He asserts that "[f]or the first time through these proceedings[, he] has been made aware that his appeal was never logged or received by prison officials" and that "[t]he prison mail system is something that [he] has no control over." [Filing no. 21 at 2.] He argues that he did all that the law requires of him and that the Respondent is not prejudiced by the additional grounds. [Filing No. 12; Filing No. 13; Filing No. 21 at 2.]

In Indiana, only the issues raised in a timely appeal to the Facility Head and then to the Final Reviewing Authority may be raised in a subsequent petition for a writ of habeas corpus unless a showing of cause and prejudice or a miscarriage of justice has been made. *See* 28 U.S.C. § 2254(b)(1)(A); *Love v. Vanihel*, 73 F.4th 439, 446 (7th Cir. 2023) (state prisoners must exhaust their available state remedies before challenging a prison disciplinary conviction in federal court); *Washington v. Boughton*, 884 F.3d 692, 698 (7th Cir. 2018); *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002); *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). Indiana "has no judicial procedure for reviewing prison disciplinary hearings, so the exhaustion requirement in 28 U.S.C. § 2254(b) is satisfied by pursuing all administrative remedies, and presenting legal contentions to *each* administrative level." *Love*, 73 F.4th at 446 (quotations and citations omitted, emphasis added).

6

A petitioner seeking review of defaulted claims has two options.  He can show "cause for the default and actual prejudice as a result of the alleged violation of federal law," *Shinn v. Ramirez*, 142 S. Ct. 1718, 1733 (2022), or he can demonstrate that failure to consider the defaulted claims will result in a "miscarriage of justice," *Love*, 73 F.4th at 446.  "The existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded compliance with the procedural rule." *Id.* (quotation and citation omitted).  "This normally means petitioner must show that the factual or legal basis for a claim was not reasonably available, or that some interference by officials made compliance impracticable." *Id.* (quotations, citations, and alteration omitted).  "In other words, the 'cause' must be 'something that cannot fairly be attributed' to the petitioner." *Martin v. Vannatta*, 175 F. App'x 45, 46 (7th Cir. 2006) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)).

To show prejudice, "the prisoner must show not merely a substantial federal claim, such that the errors at trial created a possibility of prejudice, but rather that the constitutional violation worked to his actual and substantial disadvantage." *Love*, 73 F.4th at 446 (quoting *Shinn*, 142 S. Ct. at 1733).  To demonstrate a fundamental miscarriage of justice, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent" such that "it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence." *Thomas v. Williams*, 822 F.3d 378, 386 (7th Cir. 2016).

Mr. Gaines's first-level appeal challenged only the Conduct Report's reference to two different offenses and his right to 24-hours' notice of the charge before a hearing, among other challenges that were not included in his Petition or motions to supplement.  [Filing No. 18-13.] His first-level appeal does not raise the other three grounds raised in his Petition or motions. Nevertheless, Mr. Gaines has met the standard for showing cause for the failure to raise these

grounds because he has submitted evidence that he was unable to obtain additional paper to include all arguments his appeal and when he tried to finish submitting his appeal after being in segregation, he received no response and later discovered that his finished appeal was not recorded. These circumstances were beyond his control and, as the Supreme Court has made clear, the failure to raise claims under such conditions "cannot fairly be attributed" to Mr. Gaines. *Coleman*, 501 U.S. at 753.

However, turning to prejudice, which must be shown alongside cause in order for a petitioner to overcome default, *Love*, 73 F.4th at 446, Mr. Gaines submits that the Respondent suffers no prejudice from the two new grounds that he was previously unable to raise, but this argument misunderstands the legal standard of prejudice in this context. Here, prejudice does not refer to harm to the opposing party, but rather to whether the alleged constitutional violation caused the petitioner (here, Mr. Gaines) an actual and substantial disadvantage. *Shinn*, 142 S. Ct. at 1733; *Love*, 73 F.4th at 446. Mr. Gaines has offered no argument under the proper standard of prejudice, or any argument relating to a fundamental miscarriage of justice for that matter, and these omissions are dispositive. *Anderson v. Street*, 104 F.4th 646, 654 n.3 (7th Cir. 2024) (holding that undeveloped arguments are waived) (citing *Greenbank v. Great Am. Assurance Co.*, 47 F.4th 618, 629 (7th Cir. 2022) (noting that courts "are not responsible for constructing the parties' arguments")). Mr. Gaines has not shown cause and prejudice or a fundamental miscarriage of justice necessary to overcome procedural default. He is therefore not entitled to habeas relief on the following grounds due to procedural default: (1) the failure to chemically test the substance; (2) that not all information was used by the Final Reviewing Authority when it denied his appeal; and (3) the denial of an impartial decisionmaker.

In any event, as explained on the merits below in the interest of thoroughness, Mr. Gaines cannot demonstrate a constitutional violation in connection with the claims subject to procedural default.

**B.      Inconsistencies in Conduct Report**

Mr. Gaines argues that he "was not able to adequately prepare a viable defense" because the Conduct Report mentioned both Offense B-202, Possession or Use of a Controlled Substance, and Offense B-231, Intoxicating Substance, and that "the reporter clearly intended the charge to be an intoxicating conduct report not a possession charge." [Filing No. 2 at 4.]  He also asserts that under prison policy, an alternate offense may be charged but only as to an offense that is equal to or "a step down in severity," yet here, he was originally charged with Offense B-231, Intoxicating Substance, and the offense was later increased to Offense B-202, Possession or Use of a Controlled Substance, in violation of that prison policy. [Filing No. 2 at 3-4.]

The Respondent argues that Mr. Gaines "makes much of the fact that the conduct report indicated he was charged with B-202, possession of a controlled substance, but the body of the report said the charge was B-231, intoxicating substance," but that he "could not have seriously questioned the charge against him because the conduct report clearly states the charge is '202-Posession/Use of A Controlled Substance,' and the screening report also identified the charge as '202.'" [Filing No. 18 at 13 (quoting Filing No. 1; Filing No. 5).]  The Respondent asserts that if Mr. Gaines "was seriously confused about the charge against him he could have asked for clarification.  Instead, he signed both the conduct report and the screening report, suggesting that he understood he was charged with B-202." [Filing No. 18 at 14 (citations omitted).]  The Respondent also contends that "the record does not show any changes to the original charge, only that Sergeant Fagoroye mistakenly wrote B-231, intoxicating substance, at the end of the conduct

report instead of B-202, possession of a controlled substance, which was the actual charge." [Filing No. 18 at 15.]  As to Mr. Gaines's prison policy argument, the Respondent argues that violations of prison policy do not warrant habeas relief.  [Filing No. 18 at 17.]

Due process requires that an inmate be given advanced "written notice of the charges . . . in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564.  Generally, this requires the notice to "alert the inmate to the rule that he allegedly violated and summarize the facts underlying the charge." *Ball v. Grams*, 337 F. App'x 566, 568 (citing *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995)); *cf. Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (harmless error doctrine applies to prison disciplinary cases); *Montgomery v. Anderson*, 262 F.3d 641, 646 (7th Cir. 2001) (finding harmless error where the Conduct Report listed the wrong statute because the Court was assured that the defect was not misleading).

Here, the Conduct Report charges Mr. Gaines with Offense B-202, Possession or Use of a Controlled Substance, and this is the only charge indicated on the Screening Report that Mr. Gaines signed.  At first glance, the reference to Offense B-231, Intoxicating Substance, on the Conduct Report's description of incident section warrants slight concern, but when the record is viewed as a whole, any concern that Mr. Gaines was confused or unable to prepare a defense is annulled. The Court finds it persuasive that Mr. Gaines did not ask for clarification and that he signed the Screening Report, which clarified that he was being charged with Offense B-202, Possession or Use of a Controlled Substance—not Offense B-231, Intoxicating Substance.  [Filing No. 18-5.] *Montgomery*, 262 F.3d at 646 (affirming a disciplinary conviction despite a defect in the Conduct Report and explaining that if the petitioner was confused, he could have asked for clarification of the charges, but he did not).

Mr. Gaines also argues that the Respondent violated prison policy when it "changed" the charge from Offense B-231, Intoxicating Substance to Offense B-202, Possession or Use of a Controlled Substance.  The Court's review of the record does not reveal that the offense was ever "changed," just that the reference to Offense B-231, Intoxicating Substance, in the Conduct Report's description of incident was a mistake.  Significantly, there are no lines crossing out and writing over the offense charged on any record evidence and Offense B-202, Possession or Use of a Controlled Substance, was the only charge for which Mr. Gaines was screened.  In any event, prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates."  *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy are not cognizable and do not form a basis for habeas relief.  *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review.").

Mr. Gaines's due process rights were not violated by the fact that the Conduct Report also referenced Offense B-231, Intoxicating Substance, and he is not entitled to habeas relief on this ground.

### C.    Failure to Chemically Test the Substance

Mr. Gaines asserts that he was denied due process when the Respondent did not chemically test the orange-colored substance it confiscated from his knee brace.  [Filing No. 2 at 5-6.]  He asserts that "there should be a requirement of securing and proving" the chemical makeup of confiscated items thought by Respondent to be a controlled substance given the definition of Offense B-202, Possession or Use of a Controlled Substance.  [Filing No. 2 at 5.]

11

The Respondent argues that Mr. Gaines was not entitled to have the substance chemically tested.  [Filing No. 18 at 15-17.]

In reply, Mr. Gaines reiterates that the substance was not chemically tested.  [Filing No. 21 at 1.]

Even if Mr. Gaines's procedural default on this argument were excused, Mr. Gaines's argument fails because neither the law nor the definition of Offense B-202, Possession or Use of a Controlled Substance, requires chemical testing.  *See Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017) (holding that petitioner had no right to laboratory testing of a substance where other evidence was sufficient and that prison administrators are not obligated to create favorable evidence or produce evidence they do not have).  [Filing No. 18-15 at 3 (Offense B-202, Possession or Use of a Controlled Substance, prohibits the "[p]ossession or use of any unauthorized controlled substance pursuant to the law of the State of Indiana or the United States Code, . . . or a *lookalike* substance") (emphasis added)].  Suboxone is a controlled substance, *Dollard v. Whisenand*, 946 F.3d 342, 348 (7th Cir. 2019), and it routinely presents an an orange-colored substance, *Taylor v. Warden*, 2022 WL 1510260, at *1 (S.D. Ind. Apr. 28, 2022) ("Investigator R. Patton found a strip of orange paper that he recognized through his experience as a correctional officer to be Suboxone"); *Taboada v. Warden*, 2022 WL 6580311, at *1 (N.D. Ind. Sept. 15, 2022) (orange strips found in petitioner's cell were believed by officers to be Suboxone); *Hoskins v. Warden*, 2021 WL 1821642, at *1 (N.D. Ind. Apr. 19, 2021) (30 strips of orange paper "appeared to be [S]uboxone").  Further, Sgt. Fagoroye "reasonably believed" the orange substance to be Suboxone based on his training and experience.  [Filing No. 18-1.]  This is sufficient evidence that the orange substance recovered was Suboxone.  So, even if the definition of the offense required testing—

which it does not—a chemical test was not required under the law.  *See Manley*, 699 F. App'x at 576.

In sum, procedural default aside, Mr. Gaines's due process rights were not violated when the orange substance believed to be Suboxone was not chemically tested, and he is not entitled to habeas relief on this ground.

### D.    Right to 24 Hours' Notice of the Charges and Evidence Against Him

Mr. Gaines argues that his due process rights were violated because he was not afforded 24 hours' notice of the charge against him before his hearing was held and he was not provided with the evidence against him 24 hours before the hearing.  [Filing No. 2 at 6; Filing No. 13.]  He contends that on the day of the hearing, an officer made an incriminating statement against him for the first time and that "[e]vidence cannot be presented for the first time in the midst of a disciplinary hearing."  [Filing No. 13 at 2.]

The Respondent argues that Mr. Gaines was provided with more than 24 hours' notice before his hearing, highlighting that he was notified of the charge against him on June 11, 2024, and the hearing occurred on June 28, 2024.  [Filing No. 18 at 17.]  The Respondent contends that the change of hearing from June 21, 2024 to June 20, 2024 did not impede Mr. Gaines's rights, and in any event, the hearing was later postponed to June 28, 2024.  [Filing No. 18 at 17.]  The Respondent asserts that Mr. Gaines was not entitled to the evidence that would be used against him.  [Filing No. 18 at 14 (citations omitted).]

In reply, Mr. Gaines reiterates that he was provided evidence less than 24 hours before his hearing, which violated his rights.  [Filing No. 21 at 2.]

Mr. Gaines was only entitled to 24 hours' notice of the charges against him and a summary of the facts supporting those charges, *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003), which

he received on June 11, 2024, before his hearing on June 28, 2024. The change of date from June 21, 2024 to June 20, 2024 did not affect his right to 24 hours' notice of the charge against him since he was notified on June 11, 2024. Because Mr. Gaines received 24 hours' notice before his hearing, he is not entitled to habeas relief on this ground.

Mr. Gaines is also not entitled to habeas relief on the ground that he did not receive 24 hours' notice of the evidence against him because a petitioner does not have a due process right to the incriminating evidence that will be used against him. *See Wolff*, 418 U.S. at 556 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."); *Boyd v. Warden*, 2022 WL 17404192, at *4 (S.D. Ind. Dec. 2, 2022) ("Due process does not require that [the petitioner] receive advanced notice of all witnesses or the evidence against him in a disciplinary case.").

Mr. Gaines is not entitled to habeas relief on the ground that he did not receive 24 hours' notice of the charge against him before his hearing or 24 hours' notice of the evidence against him.

### E.    Appeal Process

Mr. Gaines argues that his due process and equal protection rights were violated when he sent his appeal to the Final Reviewing Authority and the decisionmaker "rendered un-constitutional judgment." [Filing No. 2 at 7 (emphasis omitted).] He asserts that his wife was in contact with the Final Reviewing Authority during the appeal process through e-mail and was told that the Final Reviewing Authority was waiting on additional information from the facility before rendering a decision but that the Final Reviewing Authority never actually received the additional information and rendered a decision anyway. [Filing No. 2 at 7.] He asserts that the appeal process "was not correct [because] all information was not used" and that "someone else in a similar situation" was treated differently. [Filing No. 2 at 7.]

14

The Respondent argues that petitioners do not have a due process right to any administrative appeal and that the administrative appeal process is a matter of state policy, which does not give rise to habeas relief.  [Filing No. 18 at 17-18 (citations omitted).]

Mr. Gaines did not address this argument in reply.  [Filing No. 21.]

Even if Mr. Gaines's procedural default on this argument were excused, he is not entitled to habeas relief.  The Respondent is correct that there is no due process right to an administrative appeal, and thus any errors during the administrative appeal process cannot form the basis for habeas relief.  The Supreme Court in *Wolff* made clear that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  418 U.S. at 556.  The due process rights that apply, which are set forth in detail in *Wolff*, do not include any safeguards during an administrative appeal, nor even a right to appeal at all.  And the procedural guarantees set forth in *Wolff* may not be expanded by the lower courts.  *See White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001).

As to Mr. Gaines's equal protection argument, he does not identify who the similarly situated individual is who he contends was treated differently in the appeals process and fails to allege or submit evidence of any discriminatory motive on behalf of the Final Review Authority that would form the basis for an equal protection claim.  *Adams v. Reagle*, 91 F.4th 880, 892 (7th Cir. 2024) (on an equal protection claim in a prison discipline case, petitioner must produce either direct evidence of discriminatory motive or show that he was treated differently from a similarly situated individual due in part to a discriminatory motive).  His equal protection claim therefore fails.

Procedural default aside, Mr. Gaines is not entitled to habeas relief on the ground that there was an error in the appeals process or an equal protection violation in the appeals process.

### F.    Impartial Decisionmaker

Mr. Gaines argues that on June 24, 2024 when Sgt. Hilliard delivered the Video Evidence Review, Mr. Gaines asked Sgt. Hilliard if he was going to be the DHO presiding over Mr. Gaines's hearing, to which Sgt. Hilliard responded that he would be the DHO.  [Filing No. 12 at 2.]  Mr. Gaines then also asked Sgt. Hilliard "about the status of his disciplinary case," to which Sgt. Hilliard responded, "I have already found you guilty bud, I have yet to print the paperwork out. My mind is already made up after watching that video, you['re] guilty.  Appeal it."  [Filing No. 12 at 2.]  Mr. Gaines argues that this conversation establishes that the DHO was biased.  [Filing No. 12 at 2.]

The Respondent argues that Sgt. Hilliard (the DHO) did not say what Mr. Gaines alleges and that he found Mr. Gaines guilty "based on the evidence," as explained on the Report of Disciplinary Hearing.  [Filing No. 18 at 19 (quoting Filing No. 18-8).]  The Respondent asserts that even if Sgt. Hilliard said what Mr. Gaines alleges, the statement shows that Sgt. Hilliard considered the video evidence before making a determination.  [Filing No. 18 at 19.]

Mr. Gaines reiterates his argument in reply.  [Filing No. 21 at 2-3.]

A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker.  *Hill*, 472 U.S. at 454.  A "sufficiently impartial" decisionmaker is necessary in order to shield the prisoner from the arbitrary deprivation of his liberties.  *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam).  Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary.  *Piggie*, 342 F.3d at 666; *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).  Indeed, the "the constitutional standard for impermissible bias is high."  *Piggie*, 342 F.3d at 666.  "To overcome that presumption, [a prisoner] need[s] to present clear evidence of bias."

*Nelson v. Stevens*, 861 F. App'x 667, 670 (7th Cir. 2021). The presumption can be rebutted when a petitioner provides "specific allegations" and other evidence of a decisionmaker's bias in his particular case. *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) (cited by *Higgason v. Lemmon*, 6 F. App'x 433, 435 (7th Cir. 2001) (applying *Bracy* to deny habeas relief regarding impartial decisionmaker)). A disciplinary hearing officer can make statements indicating "he [is] confident in the charges . . . lodged against" the petitioner, but it is unconstitutional for a disciplinary hearing officer "to predetermine the hearing outcome" notwithstanding the evidence. *Prude v. Meli*, 76 F.4th 648, 658 (7th Cir. 2023).

Even if Mr. Gaines's procedural default on this argument were excused, he still fails to overcome the strong presumption that the DHO acted impartially. Mr. Gaines claims that the DHO stated he would find him guilty after reviewing the video evidence but before the hearing. The DHO testifies that he did not make this statement, but the Court assumes for purposes of this analysis that such a statement was made. Nevertheless, this statement does not constitute significant evidence that the DHO had predetermined the outcome without considering the evidence. Significantly, both the DHO's statement and the Disciplinary Hearing Report make clear that the DHO reviewed evidence before reaching a decision. *Cf. Prude*, 76 F.4th at 655, 658-59 (finding that decisionmaker was biased when there was significant evidence in the record that the DHO predetermined petitioner's guilt before the hearing without consideration of any evidence, told petitioner that he was not allowed to present any evidence, and started the hearing by telling petitioner that his "hands [were] tied" on the discipline to be ordered, which was the exact punishment later ordered). The Disciplinary Hearing Report specifically states that the Conduct Report, witness statements, and Video Evidence Review were considered, and that the DHO found Mr. Gaines guilty based on clear video evidence and corroborating witness accounts. [Filing No.

18-8.] Although the DHO's alleged comment was inappropriate, the Court finds that the statement reflects confidence in the strength of the video evidence rather than proof of a biased or preordained decision without consideration of the evidence. *Cf. id.*

## IV.
### CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in Mr. Gaines's case, and there was no constitutional infirmity in the proceeding that entitles him to the relief he seeks. Accordingly, Mr. Gaines's Petition for a Writ of Habeas Corpus, [2], is **DENIED**, and the action is dismissed.

Final judgment shall issue by separate order.

Date: 5/6/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record**

**Distribution via U.S. Mail to:**

TIMOTHY GAINES
983065
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
1946 West U.S. Hwy 40
Greencastle, IN 46135